## JAMES ALLEN DORSEY AND WALKER GLAD-DEN, JR. *v.* STATE OF MARYLAND

[No. 198, Initial Term, 1967.]

*Decided September 7, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH,

and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Milton B. Allen* for appellants.

*David T. Mason, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Raymond Faby, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

James Allen Dorsey and Walker Gladden, Jr., the appellants, complain of a conviction for larceny in the Criminal Court of Baltimore before Judge Meyer M. Cardin sitting without a jury. At the oral argument it was conceded by appellants that the only issue involved was the legality of the search and seizure of the stolen merchandise.

At 8:47 p.m. on April 27, 1966, Officer Edmund Bellack of the Baltimore City Police Department received a call to go to 1701 N. Appleton Street in Baltimore City. Upon arrival, he received a report from the owner that the Neighborhood Cleaners had been broken into and a television set and a quantity of clothes, all valued at $700, had been stolen. At 12:30 a.m. the next morning, the officer received information from Elizabeth Crawley, who resided at 1704 N. Appleton Street, that she saw two men (whom she later identified as Gladden and Dorsey) carrying clothes in cellophane and paper bags and something resembling a suitcase into the first floor apartment of 1702 N. Appleton Street. On this information, Officer Bellack and other officers went to the apartment at 1702 to investigate the crime. Appellant Gladden admitted the officers into the apartment but refused their request for permission to search the premises. After the officers observed a ticket from the Neighborhood Cleaners on the floor, they talked to Rona Jordan, who was also on the premises and who gave them oral permission to search the premises after stating that she paid the rent for the apartment out of her welfare check. Gladden told the officers he wanted to call a lawyer and was permitted to leave the apart-

ment. The officers searched the apartment as well as the cellar, the latter being used in common by the two tenants in the apartment structure. A television set and a large quantity of clothing with the Neighborhood Cleaners' tags attached were found in the cellar, together with the appellant Dorsey, who was hiding under the cellar steps. They arrested Dorsey, seized the clothes and television set, after which Mrs. Jordan signed the written statement consenting to the search.

Rona Jordan testified that the police asked her if they could search her house and she replied "yes." However, she denied giving the police officers specific permission to search the cellar. She also stated that before she signed the written statement giving the police permission to search she was told that if she didn't sign, they were going to take her to jail and take her children. She further indicated that she did not know Gladden or Dorsey were in the apartment until the morning the apartment was searched, and that the use of the basement comes with the rental of the apartment.

Gladden testified that while the apartment was not his permanent address, he lived there "off and on" and contributed toward the rent. Mrs. Crawley, the State's principal identification witness, testified that she lived next door to appellant Gladden, saw him every day, and considered him a neighbor. She further testified that she saw Dorsey with Gladden at the apartment on two occasions.

It is, of course, well settled that a search of premises can survive constitutional inhibition only upon a showing that the surrounding facts bring it within one of the exceptions to the rule that a search, to be reasonable, must rest upon a valid search warrant. *Stoner v. California,* 376 U.S. 483. Thus, a search by permission of the person entitled to constitutional protection from an unreasonable search is lawful. *Carter v. State,* 236 Md. 450; *Gross v. State,* 235 Md. 429; *Stewart v. State,* 1 Md. App. 309. Assuming that Mrs. Jordan did consent to the search of the apartment, the question remains as to whether her consent could bind either or both of the appellants, and whether the search and seizure of the incriminating evidence, as to them, was under the circumstances of this case a constitutional search.

On the record before us—meager though it be—we hold that

Gladden was not only legitimately on the premises at the time the police undertook their search, but that, for purposes of his Fourth Amendment guarantee against unreasonable search and seizure, he was a joint occupant of the premises with Mrs. Jordan, having clear standing to object to a search without a warrant. See *Jones v. United States,* 362 U.S. 257; *Belton v. State,* 228 Md. 17. In *Nestor v. State,* 243 Md. 438, 443, the court held that one co-tenant may give consent to a search and the evidence there disclosed can be used against the other tenant "whose permission to enter and search the premises had not been elicited." Hence, in *Bellam v. State,* 233 Md. 368, the consent of a wife as a joint occupant of a residence with her husband was held sufficient to bind her husband, who was not present. In *McCray v. State,* 236 Md. 9, it was held that the consent of a parent to search a part of his dwelling used by his son who resided there only occasionally, and who was not present at the time of the search, was binding on the son.[1] But, as pointed out in *Nestor* at p. 443, that the consent of one co-tenant may bind the other "does not stem from the implication that a consenting tenant may waive the other's constitutional rights against trespass and unreasonable searches and seizures, but rather from the possessory rights of the co-tenant to admit to the jointly controlled premises whomsoever he wishes, including police officers." Unlike *Bellam* or *McCray,* Gladden, as the co-occupant in the instant case, was present and expressly objected to the search without a warrant, thus making the factual situation similar to that before the Supreme Court of California in *Tompkins v. Superior Court,* 378 P. 2d 113. In that case, a co-tenant was arrested and gave police authority to search his apartment. The police attemped to search the apartment without a search warrant against the express objection of the arrestee's co-tenant. In holding that the police officers committed a trespass and made an unreasonable search and seizure, the court said: (Page 116 of 378 P. 2d)

"Joint occupancy of property, particularly residential property, obviously demands reasonable restric-

---

1. Compare, however, *Reeves* v. *Warden,* 346 F. 2d 915 (4th Cir.), reaching a contrary conclusion on similar facts.

tions on the right of each joint occupant either by himself or through another to exercise full control over the property at all times regardless of the wishes of another joint occupant present on the premises. A joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession.

\* \* \*

"Accordingly, we hold that one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter."

See also *Lucero v. Donovan,* 354 F. 2d 16 (9th Cir.), a case in which authority given to search residential premises by one having occupancy privileges therein was held rescinded by the other occupant's expressed protest to entry by the police.

The record does not disclose the exact relationship between Gladden and Jordan, and there is no evidence delineating the scope and extent of the possessory rights enjoyed by Gladden in the premises, or in any part of the premises. Under these circumstances, we are wholly unwilling to assume that Gladden, as a joint occupant of the apartment, did not have possessory rights in the cellar where the incriminating evidence was found. Accordingly, as to Gladden, we find that the search was unreasonable notwithstanding Jordan's consent to it. We therefore conclude that the court below erred in admitting the stolen merchandise into evidence against him.

Since the record clearly discloses that Dorsey was an invitee of Gladden at the time he was apprehended by police, having spent the night of April 27-28 with Gladden in the apartment, he was legitimately on the premises at the time of the search. As the police were trespassers from and after the time that they persisted in searching the apartment premises without a search warrant over Gladden's objection, they must

themselves be cast in the position of lawbreakers, and since the exclusionary rule is to a considerable extent predicated upon the assumed necessity of imposing a penalty for wrongful police action to prevent its repetition, the incriminating evidence thereby obtained is rendered inadmissible against the appellant Dorsey, as well as the appellant Gladden. See *Dailey v. State,* 234 Md. 325.

> *Judgments reversed and cases remanded for new trials.*