[Civ. No. 35665. Second Dist., Div. Four. June 23, 1970.]

RANDY WILLIAM VANDENBERG, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent; THE PEOPLE, Real Party in Interest.

**COUNSEL**

Kurilich, Slack, Ballard, Batchelor, Maher & Ricks and Richard E. Maher for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**ALARCON, J.**[*]—The petitioner seeks a "writ of prohibition and/or mandate" to nullify the effect of the court's order denying his motion to suppress evidence seized on a search of his residence.

### FACTUAL BACKGROUND

Los Angeles County Deputy Sheriff John Rodriguez was the only witness concerning the reasonableness of the challenged search and seizure. In the course of an investigation of 25 persons for smuggling marijuana into the United States he several times observed a vehicle at the residence of one of the suspected smugglers. A check through the records of the Department of Motor Vehicles revealed that the vehicle was registered to Andrew William Vandenberg whose address was 17545 Ryon Street, Bellflower, California.

Deputy Rodriguez was advised by another officer that a person named Randy William Vandenberg was a user of narcotics and drugs and lived at the same address on Ryon Street. Acting on this information Officer Rodriguez went to 17545 Ryon Street on January 31, 1969 to investigate the possible illegal use or possession of narcotics or drugs at that location by Randy William Vandenberg (hereinafter referred to as the petitioner). Deputy Rodriguez knocked on the door and it was answered by Andrew Vandenberg, Sr., the petitioner's father[1] (hereinafter referred to as Mr. Vandenberg).

---

[*]Assigned by the Chairman of the Judicial Council.

[1]The petitioner contends that the evidence does not show that Mr. Vandenberg was actually identified as the petitioner's father. The trial court made an oral finding that there were sufficient facts from which the officer could reasonably infer that Mr. Vandenberg was the father of the petitioner. Among the facts considered by the trial judge in support of this finding were the following: (1) The fact that the officer referred to the petitioner as the son of Mr. Vandenberg, and neither the petitioner nor Mr. Vandenberg denied the relationship. (2) The fact the petitioner indicated by

Deputy Rodriguez advised Mr. Vandenberg that he was conducting a narcotics investigation. He requested and was granted permission to enter the residence. The petitioner came into the section of the house where the officer and Mr. Vandenberg were conversing. Deputy Rodriguez observed puncture wounds on the petitioner's arm.

Mr. Andrew Vandenberg, Sr., denied that he used narcotics. Officer Rodriguez asked if he could look at Mr. Vandenberg's arms. Mr. Vandenberg showed his arms. The officer then stated to Mr. Vandenberg, "would you look at your son's arms. To me it appeared he has puncture wounds on his arms." The officer then approached the petitioner, who had his arms folded with his palms covering the elbow part of his arms. The officer asked the petitioner, "Can I see your arms?" and Mr. Vandenberg stated "You have nothing to hide, show the man your arms." The petitioner extended his arms and Deputy Rodriguez pointed out the puncture wounds to Mr. Vandenberg. Deputy Rodriguez asked Mr. Vandenberg if there were any narcotics at the location. Mr. Vandenberg replied "No, go ahead and look I want you to look everywhere." The officer requested permission to search the house for narcotics. Mr. Vandenberg stated, "Go ahead, if he is involved in anything I want to clear it all up. Search everywhere." The petitioner stated, "Don't let them look, they don't have a search warrant." The trial court found that the petitioner's statement was directed to his father, and not to the officer. Mr. Vandenberg did not reply. Acting upon the permission to search thus granted by Mr. Vandenberg, the house was searched.

Officer Rodriguez was told that Mr. Vandenberg and his son shared the same bedroom. In searching this bedroom the officers found 18 multicolored balloons, all empty but containing a powdery residue, some needles, a yellow paper containing a substance resembling heroin secreted between towels stacked in a towel rack. At this time the petitioner was placed under arrest. After the petitioner's arrest the search was continued.

In the bottom drawer of the bedroom closet the officers found four wax bags containing marijuana. In the same bedroom closet the officer found a leather jacket containing approximately 13 capsules, some seven resembling Seconal and some resembling Tuinal. After the jacket was searched and the 13 capsules were seized, Mr. Vandenberg was asked if the leather jacket belonged to him. Mr. Vandenberg replied, "It is not mine." Prior to searching the jacket the officer thought the jacket might belong to the petitioner.

his conduct and words that he was subject to the parental authority of Mr. Andrew Vandenberg. (3) The obvious difference in age of petitioner and Mr. Vandenberg. We are satisfied that the evidence supports the inference drawn by the trial judge that a father-son relationship exists between the petitioner and Mr. Vandenberg. No evidence was offered by the petitioner at the evidentiary hearing conducted pursuant to Penal Code section 1538.5 to support a contrary conclusion.

At the time of the challenged search and seizures the officers did not have an arrest or a search warrant. An information was filed charging the petitioner: count I, possession of heroin, count II, possession of marijuana, and count III, possession of dangerous drugs.

### PROBLEM

The petitioner contends that his Fourth Amendment rights were violated because the officers searched the premises without probable cause for his arrest, without an arrest or search warrant and despite his objection to a search in the absence of a warrant.

The People argue that the search of the premises was reasonable because of the father's consent.

### DISCUSSION

The evidence is not sufficient to establish probable cause for the arrest of the petitioner *prior to the entry of his residence.* Therefore, the entry and initial search of the bedroom which resulted in the seizure of the heroin can only be justified if the consent granted by Mr. Vandenberg was effective over the objections of his son, the petitioner herein.

*Justification for the Search and Seizure of the Heroin.* ■ It has long been established that a search and seizure of evidence is reasonable in the absence of a search warrant where the sole occupant of the premises has given his consent. (*Zap* v. *United States,* 328 U.S. 624, 628 [90 L.Ed. 1477, 1481, 66 S.Ct. 1277]; *Davis* v. *United States,* 328 U.S. 582, 593-594 [90 L.Ed. 1453, 1460-1461, 66 S.Ct. 1256]; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) ■ It is also clear that, where premises are occupied by more than one person, a search of those portions of the premises jointly possessed is reasonable where consent has been granted by one of the joint occupants who is present at the time of the search. (*People* v. *McGrew,* 1 Cal.3d 404, 412-413 [82 Cal.Rptr. 473, 462 P.2d 1]; *People* v. *Hill,* 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641, 446 P.2d 521]; *People* v. *Smith,* 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Caritativo,* 46 Cal.2d 68, 72-73 [292 P.2d 513].)

■ In the instant case Mr. Vandenberg gave permission to search "everywhere" including the bedroom he shared with his son. Since the bedroom was not a portion of the house which was set aside as the exclusive domain of the petitioner, Mr. Vandenberg had the authority to permit the officers to enter and search. (See *People* v. *Linke,* 265 Cal.App.2d 297, 316-317 [71 Cal.Rptr. 371].)

■ The petitioner contends that the rule enunciated in *Tompkins* v.

*Superior Court,* 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], is controlling under the facts before us. In *Tompkins* the court stated, at page 69: "[O]ne joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter."

In the matter before us the officers searched the bedroom despite the request by the petitioner *to his father* that he deny permission to search because the officers did not possess a warrant.

The only common element between the facts presented in the *Tompkins* decision and the facts of the present case is that an objection to search without a warrant was raised by one occupant who was present on the premises after consent was granted by another occupant. There are many factors which distinguish the instant case from *Tompkins.*

In *Tompkins* the following facts were before the court: (1) each occupant shared possession of the premises; (2) the consenting occupant was not present; (3) the officer failed to disclose his purpose to the occupant who was present; (4) the occupant who was present was not told that consent to enter had been granted by the absent occupant.

In the present case the following distinguishing factors are present: (1) there is no evidence that the petitioner had any legal right to possession of the premises—the trial court found that the petitioner was a tenant "in sufferance" of his father with no control over the use of the premises; (2) Mr. Vandenberg (the consenting occupant) was present at the time of the search; (3) Deputy Rodriguez disclosed his desire to search in the presence of the petitioner; (4) the petitioner was aware that his father granted permission to search.

The foregoing material distinctions make the *Tompkins* rule inapplicable under these facts. We believe that the father-son relationship of the petitioner and Mr. Vandenberg is the decisive element in this case.

Petitioner's petition to this court alleges his age as 19. We have discussed in footnote No. 1, the evidence supporting the finding that the elder Vandenberg was petitioner's father. The record further shows that petitioner's allegation of emancipation failed for lack of proof. Accordingly, on this record, we deal with the typical case of a minor child, living with his father, in the father's home, and subject to the ordinary rules regulating the relationship of parent and minor child.

■ In his capacity as the owner of the legal interest in the property, a father can transfer to the police the limited right to enter and search the entire premises including that portion of the real property which has been designated by the parent for the use of his children. (See: *People* v. *Egan,* 250 Cal.App.2d 433, 436 [58 Cal.Rptr. 627].) ■ In his capacity as the head of the household, a father has the responsibility and authority for the discipline, training and control of his children. In the exercise of his parental authority a father has full access to the room set aside for his son for purposes of fulfilling his right and duty to control his son's social behavior and to obtain obedience. (See: *In re Donaldson,* 269 Cal.App.2d 509, 513 [75 Cal.Rptr. 220].) Permiting an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father's authority and control over his children's moral training, health and personal hygiene.

In the case before us the petitioner recognized and submitted to his father's parental authority over his person, and his parent's legal control over the use and possession of the entire premises, by appealing to Mr. Vandenberg not to let the officers search without a warrant rather than protesting directly to Deputy Rodriguez. Under such circumstances it was reasonable for the officer to rely on the consent of the father and ignore the objection of the son. ■ In determining the reasonableness of a law enforcement officer's conduct in making a search based on consent, the controlling determination is whether under the circumstances: (a) the person purporting to grant consent to the police believes he has exclusive or joint control over the premises and (b) the police reasonably and in good faith believe such person has the authority to consent to such entry. (See: *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 608 [21 Cal.Rptr. 552, 371 P.2d 288]; *People* v. *Superior Court,* 3 Cal.App.3d 648, 654 [83 Cal.Rptr. 732]; *People* v. *Burke,* 208 Cal.App.2d 149, 159 [24 Cal.Rptr. 912].)

■ Based on the foregoing analysis, it is our view that a father may grant permission to enter and search a bedroom jointly occupied by the father and his son and such consent is valid although the son may protest the search. Accordingly, the seizure of the heroin found hidden between the towels on the towel rack was reasonable because of Mr. Vandenberg's consent to enter and search the bedroom.

■ *The Search and Seizure of the Marijuana.* The seizure in a drawer in the bedroom closet was reasonable under either of two theories: (1) the consent to search "everywhere" included the closet of the bedroom shared by the petitioner and Mr. Vandenberg; (2) the finding of the substance resembling heroin in the bedroom, the puncture wounds on the arms of the petitioner and the unverified report that the petitioner was a user of narcotics

constituted probable cause for the arrest of the petitioner for the possession of heroin. The search of the dresser drawer which followed the petitioner's arrest was therefore contemporaneous and incident to a lawful arrest.[2]

*The Search of the Jacket.* The search of the jacket was also reasonable since it immediately followed the seizure of the heroin and the petitioner's arrest and was incident thereto.

The motion to suppress was properly denied by the trial court. The alternative writ of mandate is discharged. The petition for a peremptory writ of prohibition or mandate is denied.

Kingsley, Acting P. J., and Dunn, J., concurred.

---

[2]The events preceded the decision in *Chimel* so that the limitations of the case are not involved.